# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**EDGAR ZUNIGA-MEJIA,**

     **Petitioner,**

**v.**                                 **Case No. 8:12-cv-1403-T-27TBM**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

     **Respondent.**

_____/

## ORDER

Petitioner Edgar Zuniga-Mejia, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his convictions entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, in 2005.  Respondent filed a response (Dkt. 10) and Petitioner filed a reply (Dkt. 16).  Upon review, the petition must be denied.

### Procedural History

A jury convicted Petitioner of trafficking in illegal drugs (28 grams to 30 kilograms) and conspiracy to traffic heroin.  (Dkt. 13, Ex. 28, Vol. 1, Verdict Form.)  He was sentenced to concurrent terms of forty years in prison.  (Dkt. 13, Ex. 28, Vol. 1, Sentence in Case No. 03-CF-012992.)  The state appellate court *per curiam* affirmed his convictions and sentences.  (Dkt. 13, Ex. 4.)  Petitioner's motion for rehearing was denied.  (Dkt. 13, Exs. 5, 6.)  Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, followed by amendments to the motion.  (Dkt. 13, Exs. 8, 9, 11.)  The state court denied several of his claims, and conducted an

evidentiary hearing on the remaining claims.  (Dkt. 13, Exs. 10, 16.)  Following the hearing, the court entered a final order denying Petitioner's postconviction motion.  (Dkt. 13, Ex. 17.)  The state appellate court *per curiam* affirmed the order of denial.  (Dkt. 13, Ex. 22.)  Petitioner's motion for rehearing and/or clarification was denied.  (Dkt. 13, Exs. 23, 24.)  While his postconviction motion was pending, Petitioner also filed a state habeas petition alleging ineffective assistance of appellate counsel, which was denied without comment.  (Dkt. 13, Exs. 26, 27.)[1]

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

---

[1] Respondent does not address the petition's timeliness.  The petition is timely under 28 U.S.C. § 2244(d)(1)(A).

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."

*Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster*, _U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The denial of Petitioner's motion for postconviction relief was *per curiam* affirmed by the state appellate court.  This decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398.

**Exhaustion of State Remedies; Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal

habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).   The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice

exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

### Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of counsel. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective

> assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690.

Petitioner must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet his burden merely by

showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## Discussion

**Grounds One and Eight**

In Ground One, Petitioner claims that the state trial court violated his Sixth and Fourteenth Amendment rights by failing to conduct a *Faretta*[2] inquiry when he sought to discharge counsel and represent himself.  When Petitioner raised this claim in his postconviction motion, the state court rejected it as procedurally barred:

> Whether the trial court erred in failing to follow the proper procedures following a defendant's request for discharge of counsel could have been determined from the record on direct appeal and therefore the claim is not cognizable in a rule 3.850 motion for post-conviction relief.  *See Jenkins v. State*, 794 So.2d 654 (Fla. 2d DCA 2001).
>
> Consequently, the Defendant is procedurally barred from bringing the claim in the instant Motion.  **Therefore the Defendant is not entitled to relief on ground 1c of his motion**.

(Dkt. 13, Ex. 10, pp. 95-96) (emphasis in original).

In Ground Eight, Petitioner argues that the prosecutor committed misconduct by charging him based on insufficient evidence.  The state court rejected this claim as procedurally barred when Petitioner brought it in his postconviction motion:

> In ground 18b, the Defendant claims that the State committed prosecutorial misconduct by charging him with possession of 28 grams to 30 kilograms of illegal drugs when there was no evidence that he ever possessed more than 12.1 grams of heroin.
>
> Claims of prosecutorial misconduct could have and should have been raised on direct appeal therefore they are procedurally barred from being brought in a motion for post-conviction relief.  *See Jones v. State*, 845 So.2d 55, 67 (Fla. 2003).
>
> Consequently, the Defendant is procedurally barred from bringing the claim in the instant Motion.  **Therefore the Defendant is not entitled to relief on ground 18b of his Motion.**

(Id., p. 108) (court's record citation omitted) (emphasis in original).

---

[2] In order to comply with *Faretta v. California*, 422 U.S. 806 (1975), the trial court should conduct a hearing when a defendant unequivocally asserts his right to self-representation.  *See Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064-65 (11th Cir. 1986).

A petitioner's failure to comply with state procedural rules governing the proper presentation of a claim typically bars federal review of that claim in a subsequent federal habeas proceeding. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Sims*, 155 F.3d at 1311.  "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).   A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner."  *Id.* (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)).

The state court's rejection of each of Petitioner's claims rested upon an independent and adequate state procedural bar.  Petitioner did not appeal the application of the state rule to the claim now raised in Ground Eight.  Furthermore, the state appellate court affirmed the application of the state rule to the claim now raised in Ground One when it rejected Petitioner's collateral appeal. Petitioner's failure to properly present the claims to the state court results in a procedural default of Grounds One and Eight.  *See Harris v. Reed*, 489 U.S. 255, 262 (1989).  Petitioner does not establish that either the cause and prejudice or the fundamental miscarriage of justice exception applies to overcome the default.  Accordingly, Grounds One and Eight are procedurally barred from federal habeas review.

**Ground Two**

Evidence introduced by the State at trial reflects that Petitioner functioned as an intermediary in a sale of heroin.  A confidential informant learned that Nelson Castillo, a co-defendant of Petitioner, was set to receive a shipment of heroin on July 30, 2003.  Officers subsequently began surveillance of Castillo and Petitioner. Their surveillance, as well as other evidence introduced at trial through State witnesses, established the following.  Castillo drove to Petitioner's trailer late on the night of July 30, 2003.  Another individual, Alvaro Ayala, arrived a short time later.  Inside the trailer, while Petitioner was present, Castillo was shown the drugs.  Castillo left briefly to obtain payment, and returned to the trailer.  This time Segundino DeLeon[3] was a passenger in his car.

DeLeon remained in the car while Castillo went inside the trailer.  There, he paid approximately $20,000 in cash for the drugs, which Ayala provided to him.  Castillo gave the money to Petitioner, and Petitioner and Ayala counted it.  The heroin that Castillo bought was placed in what was described as a thermos or water bottle.  Ayala also gave Petitioner several fingers of heroin.[4]  After Castillo, DeLeon, and Ayala left the trailer, their vehicles were pulled over by police.  DeLeon exited Castillo's car, holding the water bottle, and fled.  As he ran, he threw the bottle onto the roof of a building.  Police recovered the bottle, which was found to contain heroin.  Detective Steven Lee testified that the substance recovered from the bottle weighed 272 grams.

Officers returned to Petitioner's trailer, where they located heroin behind the toilet.  After being advised of his *Miranda*[5] rights, Petitioner agreed to speak with two detectives.  According to

---

[3] The state court record contains numerous spellings of this individual's name.

[4] Several witnesses testified that a "finger" is a condom or the finger of a latex glove filled with heroin.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the detectives, Petitioner explained that Castillo approached him about buying drugs, and that Petitioner arranged for the sale from Ayala to Castillo.  Petitioner stated that he owed money to Ayala, but that he was able to cancel his debt by setting up this sale.  Petitioner further conceded to the detectives that Ayala gave him some of the heroin, and that he tried to flush it down the toilet upon law enforcement's arrival.

Petitioner testified at trial, denying any involvement in or knowledge of the transaction between Ayala and Castillo.  He testified that while these two individuals were in his trailer on the night in question, he went outside.  Petitioner also denied making statements about the events to law enforcement.[6]

In Ground Two of his federal habeas petition, Petitioner argues that counsel was ineffective for failing to file a motion to suppress the heroin in the water bottle because it was not in his possession.  Petitioner claims that the evidence was not "seized from or near where [he] was arrested, and there was nothing to link him to the 272 grams of heroin," nor was he "arrested for this quantity of heroin."  (Dkt. 1, p. 11.)  Petitioner raised this argument in ground 1b of his postconviction motion.  After conducting an evidentiary hearing on this claim, the state court denied it:

> In his amended ground 1b, the Defendant claims that his trial counsel provided ineffective assistance by failing to file a motion to suppress the 272 grams of heroin that were found in a water bottle near where two of his co-defendants were arrested.  He alleges that because the heroin was found several blocks from his residence and there was insufficient evidence linking him to the heroin, a motion to suppress would have been granted.
>
> At the evidentiary hearing, [counsel] testified that the State's theory of the case was that the Defendant had control, either actual or constructive, of the 272 grams of heroin during the drug transaction, not at the time the heroin was seized,

---

[6] Petitioner's statements to detectives were not recorded.

and that the issue of control was a factual question for the jury to resolve therefore he did not have a legal basis for filing a motion to suppress.  Furthermore, [counsel] testified that because the Defendant intended to testify at trial, he was afraid that the State would use his admissions made at the evidentiary hearing against him at trial.

The Court finds that because the issue of whether the Defendant had control of the 272 grams of heroin was in dispute, it was a factual issue for the jury to determine.  *See State v. Dickerson*, 634 So.2d 253 (Fla. 2d DCA 1994) (holding that when the issue of whether a defendant possessed illegal drugs is in factual dispute, it is for the fact finder to determine.)  Consequently, [counsel's] performance was not deficient for failing to file a motion to suppress the 272 grams of heroin.  Furthermore, to the extent there was any legal basis for filing the motion to suppress, the Court finds that [counsel's] decision not to file the motion was a reasonable tactical decision.  *See Lawrence v. State*, 969 So.2d 294, 309 (Fla. 2007) ("Strategic decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.").  **Therefore the Defendant is not entitled to relief on ground 1b of his Motion**.

(Dkt. 13, Ex. 17, pp. 681-82) (court's record citations omitted) (emphasis in original).

To obtain relief on a claim that counsel was ineffective for failing to file a motion to suppress, Petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that he has a meritorious Fourth Amendment claim, and (3) that a reasonable probability of a different verdict exists absent the excludable evidence.  *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Petitioner does not present grounds upon which counsel could have moved to suppress the heroin found in the water bottle.  Counsel testified at the evidentiary hearing that he did not believe he had a legal basis to move to suppress this substance because it was not recovered from Petitioner's property and Petitioner refused to concede any connection to it.  (Dkt. 13, Ex. 16, pp. 652-53.)[7]  Counsel further testified that any admission of the facts alleged by the State made in

---

[7] In response to a question from Petitioner, who was *pro se* for the evidentiary hearing, counsel explained:

There was no legal basis for me to file.  There's no way I could file a motion to suppress the drugs that

pursuing a motion to suppress might be used against Petitioner when he testified at trial.  (Id., pp. 649-50.)  Moreover, the crux of Petitioner's argument in support of his ineffective assistance claim is that he did not have possession of these drugs.  But the state court determined that the resolution of this factual question was a matter for the jury.  The state court also found that counsel made a reasonable tactical decision not to file a motion to suppress.

Petitioner does not establish a meritorious Fourth Amendment claim and cannot show that counsel was ineffective for not filing a motion to suppress this evidence.  Petitioner does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.  He is not entitled to relief on Ground Two.

**Ground Three**

Petitioner was convicted of conspiracy to traffic in heroin.  Based on his assertions that he knew nothing about the drug transaction in his home, Petitioner argues counsel was ineffective for failing to object that "there was no intent, or agreement between Petitioner and co-defendant to commit conspiracy as required by Florida Statute 893.135(5)."  (Dkt. 1, p. 13.)

Respondent contends that Petitioner's claim is unexhausted because he did not raise it in his postconviction motion.  In ground six of that motion, Petitioner raised a variation of the claim presented in his habeas petition, asserting that counsel was ineffective for not objecting regarding the conspiracy count on the basis that Petitioner could not be convicted of conspiracy because he was tried separately from his co-defendants.  (Dkt. 13, Ex. 8, pp. 39-41.)  Petitioner clarifies in his reply

---

were not found in your residence, unless you were willing to admit that there was a link between you and them.  And what your basis to me was, there was none and you were not willing to admit that. And you were going to testify at trial.  So in my judgment, I felt there was no pretrial motion that we could make to suppress that evidence.

(Dkt. 13, Ex. 16, p. 653.)

that he intends to raise the claim brought in ground six of his postconviction motion.  (Dkt. 16, p. 11.)

Even liberally construing Ground Three of Petitioner's federal habeas petition as raising the same argument presented in ground six of Petitioner's postconviction motion, and assuming that claim is properly exhausted, Petitioner is not entitled to relief.  The state court rejected Petitioner's claim that counsel should have objected to the conspiracy count on the basis that Petitioner was not tried with any of his co-defendants:

> In ground 6, the Defendant claims that his trial counsel provided ineffective assistance by failing to object to any testimony regarding the conspiracy charge because he was standing trial alone therefore could not be convicted of criminal conspiracy.
>
> The rule of consistency, which applies when conspirators are tried together and provides that when all but one of the conspirators are acquitted, verdict against the remaining conspirator will not be allowed to stand, is not applicable under Florida law.  *See State v. Powell*, 674 So.2d 731 (Fla. 1996).
>
> In the instant case, the Defendant and his three codefendants were each originally charged with Conspiracy to Traffic in Heroin.  The Defendant was the only defendant to go to trial as codefendants Castillo and DeLeon each pleaded guilty and the State *nolle prossed* the charges against codefendant Ayala.
>
> Codefendants Castillo and DeLeon each pleaded guilty to the conspiracy charge; however, even if they had not, the Defendant could still have been convicted of criminal conspiracy because the rule of consistency is not applicable in Florida.  Consequently, the Defendant's trial counsel was not ineffective for failing to object to any testimony regarding the conspiracy charge on the basis that the Defendant was tried alone.  **Therefore the Defendant is not entitled to relief on ground 6 of his Motion.**

(Dkt. 13, Ex. 10, pp. 98-99) (court's record citations omitted) (emphasis in original).

Deference must be afforded to the state court's determination that, under Florida law, an objection to the conspiracy charge on the basis alleged by Petitioner would have failed.  "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  *See also Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908

(11th Cir. 2008) ("Although an ineffective assistance of counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Moreover, the state court has resolved the question of what would have happened had counsel objected for the reasons stated by Petitioner. The objection would have been overruled. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Accordingly, Petitioner does not demonstrate that counsel was ineffective for the reasons presented in Ground Three. Petitioner fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this claim. Ground Three warrants no relief.

**Ground Four**

Petitioner argues that counsel was ineffective for failing to object to the jury instruction on criminal conspiracy. He asserts this instruction improperly included the names of his co-defendants,

who entered guilty pleas.[8]   The state court summarily rejected this claim:

> In ground 7, the Defendant claims that his trial counsel provided ineffective assistance by failing to object to the criminal conspiracy jury instruction which listed his name in conjunction with his codefendant's names.  Specifically, the Defendant alleges that by including the names of his codefendants, including two that had previously pleaded guilty, the jury may have been misled into believing that he could be convicted solely based on the actions of his codefendants.
>
> It is fundamental error to include the conjunction "and/or" between the names of the codefendants in a criminal conspiracy jury instruction because the jury may convict a defendant based solely upon a finding that his codefendant's conduct satisfied an element of the offense.  *See Davis v. State*, 895 So.2d 1195 (Fla. 2d DCA 2005).
>
> In the instant case, the jury instruction did not include the conjunction "and/or"; rather it stated that for the Defendant to be found guilty of criminal conspiracy: (1) the Defendant must have intended that the underlying offense be committed and (2) in order to carry out this intent the Defendant agreed or conspired with one of his codefendants to cause the underlying offense to be committed.  The instruction is clear that the Defendant could only be convicted of conspiracy if he personally had the requisite intent and personally agreed or conspired with one of his codefendants; therefore it did not mislead the jury into believing that he could be convicted solely based on the actions of his codefendants.  Consequently, the Defendant's trial counsel was not ineffective for failing to object to the conspiracy jury instruction on this basis.  **Therefore the Defendant is not entitled to relief on ground 7 of his Motion.**

(Dkt. 13, Ex. 10, pp. 99-100) (court's record citation omitted) (emphasis in original).

The criminal conspiracy jury instruction provided in Petitioner's case states:

> To prove the crime of Criminal Conspiracy, the State must prove the following two elements beyond a reasonable doubt:
>
> 1.   The intent of Edgar Zuniga-Mejia, was that the offense of trafficking in heroin would be committed.
>
> 2.   In order to carry out the intent Edgar Zuniga-Mejia agreed or conspired with Nelson Castillo, Alvaro Ayala or Secundino Deleon to cause the trafficking in heroin to be committed either by them, or

---

[8] The record reflects that at the time of Petitioner's trial, co-defendants DeLeon and Castillo had entered guilty pleas and were awaiting sentencing.  The State dropped charges against Ayala, who also had been charged as a co-defendant.

one of them, or by some other person.

It is not necessary that the agreement or conspiracy to commit trafficking in heroin be expressed in any particular words or that words pass between the conspirators.

It is not necessary that the defendant do any act in furtherance of the offense conspired.

It is a defense to the charge of criminal conspiracy that Edgar Zuniga-Mejia, after conspiring with one or more persons to commit the trafficking in heroin, persuaded Nelson Castillo, Alvaro Ayala or Secundino Deleon not to do so, or otherwise prevented commission of the trafficking in heroin.

(Dkt. 13, Ex. 28, Vol. 1, Jury Instruction on Criminal Conspiracy.)

Federal habeas relief is available on claims of jury instruction error if the instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). If a jury instruction correctly states the law, the instruction does not deprive a petitioner of due process. *See id*. at 71-72. Moreover, a federal habeas court must defer to the state court's interpretation of state law. *See Richey*, 546 U.S. at 76; *Will*, 278 Fed. App'x at 908. The state court found that the instruction was not improper, and Petitioner establishes no error in the instruction. The state court further concluded that an objection to the instruction made by counsel would have been overruled. *See Herring*, 397 F.3d at 1354–55.

Petitioner does not demonstrate that counsel was ineffective for not objecting to the jury instruction on the basis alleged, or that he was prejudiced as a result of counsel's performance. Accordingly, Petitioner does not establish that the state court's decision was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Ground Four warrants no relief.

**Ground Five**

Petitioner argues that counsel was ineffective for failing to move for the "dismissal" of 11 grams of heroin[9] seized from his home because he never faced a separate charge in relation to it.[10]

After conducting an evidentiary hearing, the state court denied this claim:

> In ground 5, the Defendant claims that his trial counsel provided ineffective assistance by failing to file a motion to dismiss the evidence seized from his residence because the evidence was not relevant to the charges filed against him. [FN]  Specifically, he alleges that because law enforcement only found 12 grams of heroin in his residence, this was not relevant to the trafficking charge which required a finding that he possessed 28 or more grams of heroin.
>
> At the evidentiary hearing, [counsel] testified that he did file a motion to suppress the evidence seized from the Defendant's residence on the theory that there were no exigent circumstances for law enforcement to enter the residence.  As to the Defendant's specific claim that [counsel] should have argued that the heroin found in his residence was not relevant, the Defendant has failed to demonstrate how the heroin was not relevant to the charge of trafficking in illegal drugs.  The testimony at the evidentiary hearing showed that the trafficking charge encompassed both the 12 grams of heroin found in the Defendant's residence as well as the 272 grams found in the water bottle thus both amounts were relevant to that charge.  Consequently, [counsel's] performance was not deficient for failing to file a motion to suppress on this basis.  **Therefore the Defendant is not entitled to relief on ground 5 of his Motion**.
>
>> [FN] Although the Defendant states that his trial counsel should have filed a motion to dismiss the evidence based on a lack of jurisdiction, it is clear that he is referring to a motion to suppress the evidence based on the relevance of the evidence to the charges filed against him.

(Dkt. 13, Ex. 17, pp. 683-84) (court's record citations omitted) (emphasis in original).

The record supports the state court's finding.  The heroin recovered from Petitioner's home

---

[9] The state court record and Petitioner's arguments indicate that the amount of heroin recovered from his residence was between 11 grams and 12.1 grams.

[10] Counsel filed a motion to suppress the heroin recovered from Petitioner's home on other grounds.  (Dkt. 13, Ex. 28, Vol. 1, Defendant's Motion to Suppress.)   The trial court denied the motion.  (Dkt. 13, Ex. 28, Vol. 2, p. 255.)

was relevant to the charges against him.[11]  Evidence presented at trial reflects that Petitioner arranged and was present during the sale of heroin, that Ayala gave heroin to Petitioner at the time of the sale, and that police found approximately 11 to 12 grams of heroin in Petitioner's trailer.  The substance recovered from Petitioner's home went to the total amount of heroin Petitioner possessed and Petitioner's role in the transaction.  Therefore, it was relevant to Petitioner's charges.  Petitioner fails to establish that counsel was ineffective for not challenging the admissibility of the heroin seized from his home on the grounds that it was irrelevant.  Consequently, Petitioner is unable to demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  Ground Five warrants no relief.

**Ground Six**

Petitioner argues that, at trial, the prosecutor knowingly presented false testimony of Castillo and DeLeon in violation of *Giglio v. United States*, 405 U.S. 150 (1972).  He claims that these witnesses testified falsely that the State had not made them any offers in exchange for their testimony against Petitioner.  DeLeon testified as follows on direct examination:

> Q:  Now, as you sit here today telling what you are telling this jury, has the State made any offers to you for your testimony?
>
> A:  No.
>
> Q:  Anyone in my office or myself made any offers to you for your testimony?
>
> A:  No.

(Dkt. 13, Ex. 28, Vol. 4, p. 176.)

---

[11] The jury was instructed that to convict Petitioner of trafficking in illegal drugs, the State was required to prove that Petitioner knowingly possessed heroin or a mixture containing heroin, and the quantity involved was four grams or more. (Dkt. 13, Ex. 28, Vol. 1, Jury Instruction of Trafficking in Illegal Drugs.) The jury was further instructed that if they found Petitioner guilty, they must also determine whether the amount involved was in excess of 4 grams but less than 14 grams; 14 grams or more but less than 28 grams; or 28 grams or more but less than 30 kilograms. (Id.)

In support of his claim that this testimony was false, Petitioner cites DeLeon's testimony on cross-examination:

Q:      And you are not in custody now, are you?

A:      No.

Q:      You were released from jail, right?

A:      Yes, but I'm on house arrest.

Q:      You are on house arrest.  But you are not in jail?

A:      Nope.

Q:      And it's your expectation that you are going to remain on house arrest?

A:      Yes.  I do hope on getting some probation or something.

Q:      In exchange for your testimony here today?

A:      Yes.

(Id., pp. 178-79.)

Petitioner also asserts that Castillo testified falsely that the State had not offered him anything.  Castillo testified on direct examination:

Q:      Okay.  Now, have you plead guilty to this in this case?

A:      Yes.

Q:      Are you awaiting sentencing?

A:      Yes.

. . .

Q:      Has the State in any way, shape or form, either me or anybody else from the State offered you anything in order for you to testify here today?

Page 21 of  29

A:       No.

(Dkt. 13, Ex. 28, Vol. 5, pp. 321-22.)

Prior to Castillo's testimony, the trial court conducted a hearing on his competency to testify

in Petitioner's case.  In support of his contention that Castillo's trial testimony was untrue, Petitioner

relies on statements of two doctors who examined Castillo for competency.  Dr. Richard Carpenter

testified that Dr. Carpenter understood "there was some deal that was afloat as it relates to his

testimony" after examining Castillo.  (Dkt. 13, Ex. 28, Vol. 4, pp. 248-49.)  Dr. Vincent Skotko

testified regarding his examination of Castillo:

> And I further asked him, "So you are going to tell the truth then?"  He said, "Yes.
> I have to tell the truth.  If I do tell the truth, they will help me.  They want to give me
> a lot of time," meaning the prosecution.  But that - - he understands that if he did
> testify, that it would be in his benefit, that the amount of time that he would be given
> would be reduced, although he knows that there is no specific agreement as to the
> amount of reduction, but that in general that cooperating would be good for him.

(Id., pp. 262-63.)

After an evidentiary hearing, the state court denied Petitioner's claim that the State violated

*Giglio*:

> In ground 16, the Defendant claims that the State committed prosecutorial
> misconduct by knowingly presenting and failing to correct the false testimony of Mr.
> Castillo and Mr. DeLeon, two of the Defendant's co-defendants, regarding their plea
> agreements. Specifically, he alleges that at his trial Mr. Castillo and Mr. DeLeon each
> falsely testified that they did not receive a plea offer from the State in exchange for
> their testimony.
>      A prosecutor may not knowingly present false testimony against a defendant.
> *See Giglio v. U.S.*, 405 U.S. 150 (1972).  To establish a *Giglio* violation, it must be
> shown that: (1) the testimony given was false; (2) the prosecutor knew the testimony
> was false; and (3) the statement was material.  *See Guzman v. State*, 868 So.2d 498,
> 505 (Fla. 2003). . . .
>      At the evidentiary hearing, [the prosecutor] testified that the State had not
> made an offer to either Mr. Castillo or Mr. DeLeon at the time of the Defendant's
> trial and that each of them had pled open to the Court.  Furthermore, [counsel]

testified that he had previously deposed Mr. Castillo and Mr. DeLeon and their testimony at trial was consistent with their deposition testimony therefore he did not believe they testified falsely.

The Court finds that Mr. Castillo and Mr. DeLeon did not testify falsely at the Defendant's trial regarding their plea agreements. **Therefore the Defendant is not entitled to relief on ground 16 of his Motion**.

(Dkt. 13, Ex. 17, pp. 685-86) (court's record citations omitted) (emphasis in original).

*Giglio* provides that the prosecution violates due process by presenting false testimony or failing to correct testimony it learns to be false. 405 U.S. at 153-55. To establish a *Giglio* violation, a petitioner must show "(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material–i.e., that there is 'any reasonable likelihood' that the false testimony 'could . . . have affected the judgment.'" *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (quoting *Giglio*, 405 U.S. at 154)). "Perjury is defined as testimony 'given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory.'" *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010) (quoting *United States v. Ellisor*, 522 F.3d 1255, 1277 n. 34 (11th Cir. 2008)). A petitioner raising a *Gilgio* claim on federal habeas review must also establish that any *Giglio* violation had substantial and injurious effect or influence in determining the jury's verdict. *Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1355-56 (11th Cir. 2011) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

The prosecution must "disclose evidence of promises made to a witness in exchange for testimony" so that the jury is aware of a witness's possible motivation in giving testimony. *Ford v. Hall*, 546 F.3d 1326, 1332 (11th Cir. 2008). *See also Tarver v. Hopper*, 169 F.3d 710, 716 (11th Cir. 1999) ("*Giglio* requires the government to disclose an agreement between a witness and the

government that might motivate the witness to testify."); *Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir. 1983) ("The thrust of *Giglio* and its progeny has been to ensure that the jury know the facts that might motivate a witness in giving testimony, and that the prosecutor not fraudulently conceal such facts from the jury.").

The record supports the state court's decision. Petitioner has not offered evidence of an undisclosed agreement between the State and Castillo or DeLeon.  He has only offered evidence of what Castillo and DeLeon might have hoped for or expected upon testifying at Petitioner's trial.[12] However, any such anticipation on the part of these witnesses does not show that the State in fact offered them any benefit that it failed to disclose.  Accordingly, Petitioner does not show that the State presented any perjured testimony from Castillo or DeLeon.

Furthermore, as the state court noted, a prosecutor involved in Petitioner's trial testified at the postconviction evidentiary hearing that at the time Castillo and DeLeon testified, they had both

---

[12] Furthermore, Castillo testified as follows on cross-examination:

Q:    In this particular case that you indicated you have plead to, isn't it your impression that you are facing or you were facing up to 25 years Florida State Prison?

A:    Yes.

Q:    It's also your impression that you are going to be getting six years Florida State Prison, isn't that true?

A:    Six years?

Q:    Florida State Prison?

A:    (No response.)

Q:    Isn't that your impression, that that's what the sentence will be once you are sentenced?

A:    I'm not sure what I'm going to get.

(Dkt. 13, Ex. 28, Vol. 5, pp. 322-23.)

"plead open" and the State had not offered them anything for the testimony.  (Dkt. 13, Ex. 16, pp.

669-71, 675-76.)  She also testified that the State had not told them what they would receive for

testifying, and she did not believe their testimony to be false.  (Id., p. 676.)  Moreover, the state

court's finding that Castillo and DeLeon did not provide false testimony is entitled to deference.

Petitioner does not overcome by clear and convincing evidence the presumption of correctness

afforded to this factual determination.  28 U.S.C. § 2254(e)(1).  Because Petitioner fails to establish

a *Giglio* violation, he does not show that the state court's determination was contrary to or an

unreasonable application of clearly established federal law, or was based on an unreasonable

determination of the facts.  Ground Six warrants no relief.

**Ground Seven**

Petitioner argues that the State violated *Giglio* by offering false testimony of Sergeant

Kenneth Morman during the pre-trial hearing on Petitioner's motion to suppress the heroin found

in his home.  In that proceeding, Morman testified that Ayala was the supplier of the drugs.  (Dkt.

13, Ex. 28, Vol. 2, p. 227.)  Petitioner contends that this testimony was false because the State's

decision to drop charges against Ayala reveals that the State did not believe Ayala committed any

crime.  The state court found that Petitioner failed to establish a *Giglio* violation:

> In ground 17, the Defendant claims that the State committed prosecutorial
> misconduct by knowingly presenting false testimony at his suppression hearing and
> failing to correct it.  Specifically, he alleges that Detective Kenneth Morman
> ("Detective Morman") falsely testified that Mr. Ayala was the supplier of the heroin
> in the instant case, and he claims that the Court would have suppressed the evidence
> seized from his residence without this false testimony.
> . . .
> At the evidentiary hearing, the Defendant argued that because Mr. Ayala was
> not prosecuted by the State for his actions in the instant case, the State did not believe
> that Mr. Ayala actually committed a crime therefore the State violated *Giglio* by
> allowing Detective Morman to testify that Mr. Ayala was the supplier of the heroin

in the instant case.  However, [the prosecutor] testified that the State dropped the charges against Mr. Ayala because he was already being prosecuted by the Federal government, not because he did not commit a crime in the instant case.

The Court finds that the State did not believe Mr. Mormon's testimony was false; consequently, the State did not violate *Giglio* by knowingly presenting false testimony.  **Therefore the Defendant is not entitled to relief on ground 17 of his Motion**.

(Dkt. 13, Ex. 17, pp. 686-87) (court's record citations omitted) (emphasis in original).

Petitioner fails to show that the State presented any perjured testimony by Mormon.  That the Office of the State Attorney did not ultimately pursue charges against Ayala does not mean that Mormon's testimony describing Ayala as the supplier of the heroin was untrue.  Additionally, at the postconviction evidentiary hearing, the prosecutor explained that the State did not pursue charges against Ayala because the State believed he was facing federal prosecution in this matter.  (Dkt. 13, Ex. 16, p. 674.)  She did not say that the State believed Ayala was not in fact the supplier of the drugs.  Petitioner's contention that Ayala was not prosecuted by the federal government in connection with this incident simply does not show that Mormon's testimony was false.  As Petitioner does not establish a *Giglio* violation with regard to Mormon's testimony, he fails to show the state court's rejection of his claim involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts.  Accordingly, he is not entitled to relief on Ground Seven.

**Ground Nine**

Petitioner asserts he was denied due process of law under the Fourteenth Amendment "when the law enforcement created their own case, against Petitioner."  (Dkt. 1, p. 36.)  He asserts that law enforcement improperly aggregated the two distinct amounts of heroin recovered "so Petitioner can be convicted of 28 grams or moire [sic] of heroin" despite the State's inability to prove he "was in

actual, constructive possession or control of 28 grams or more of heroin." (Dkt. 1, p. 37-38.)

The state court denied this claim when Petitioner raised it in his postconviction motion:

In ground 15, the Defendant claims that he was denied due process of the law because law enforcement created a single packet of heroin for testing from two (2) separate packets seized in order to charge Defendant with an aggregate weight of 28 grams or more.

The State must test each individual packet of drugs before the drugs are combined and weighed. *See Safford v. State*, 708 So.2d 676 (Fla. 2d DCA 1998).

In the instant case, the State seized a heroin like substance from under the toilet in Defendant's residence; after testing this substance, it was found to be heroin and weigh 12.1 grams. A thermos filled with a heroin like substance was also recovered from codefendants Castillo and DeLeon; after testing four of fifteen pellets found in the thermos, the four pellets were found to be heroin and weigh a combined 31.6 grams. [FN]

The State individually tested each substance seized and did not combine them prior to testing; consequently, the Defendant was not denied due process of law. **Therefore the Defendant is not entitled to relief on ground 15 of his Motion.**

[FN] The total weight of the substance found in the thermos was 272 grams. (*See* Trial Transcript, pages 231-234 and 327-337, attached.)

(Dkt. 13, Ex. 10, pp. 105-06) (court's record citations omitted) (emphasis in original).

Petitioner is not entitled to federal habeas relief. Petitioner fails to cite any clearly established federal law holding that a defendant's due process rights are violated by the procedures used in testing the drugs recovered in his case. Furthermore, the record supports the state court's conclusion that the substances were not commingled prior to testing. Detective Steven Lee testified at trial that the substance in Exhibits 1A and 1B was recovered from Petitioner's home. (Dkt. 13, Ex. 28, Vol. 4, p. 227.) Anna Deakin, a former crime lab analyst for the Florida Department of Law Enforcement, testified that she tested the substance in Exhibits 1A and 1B, and that it was heroin weighing a total of 11.2 grams. (Dkt. 13, Ex. 28, Vol. 5, p. 353-55.)

Sergeant Elias Vasquez testified at trial that he recovered the water bottle from the roof of

the building after seeing DeLeon throw it there. (Id., pp. 330-32.)  He found fingers of what appeared

to be heroin inside.  (Id., p. 332.)  Vasquez identified the fingers when he was shown what was

marked as Exhibit 6 and later entered into evidence as Exhibit 5. (Id., pp. 333-34.)  Deakin further

testified that she randomly tested four out of fifteen "pellets" from this exhibit weighing a total of

31.6 grams and found the substance to be heroin.  (Id., pp. 355-59.)  There is no indication that

Deakin combined the heroin recovered from Petitioner's residence and the water bottle prior to

testing.

Therefore, contrary to Petitioner's assertions, he fails to show that the substances recovered

from his home and from inside the water bottle were commingled prior to testing.  Moreover,

Petitioner does not establish that the testing procedure involved any impropriety so as to violate his

federal due process rights.  Consequently, he does not show that the state court's rejection of his

claim was contrary to or an unreasonable application of clearly established federal law, or was based

on an unreasonable determination of the facts.  Petitioner is not entitled to relief on Ground Nine.

It is therefore

**ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.  The Clerk

shall enter judgment against Petitioner and close this case.

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability (COA).

A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas

petition. 28 U.S.C. § 2253(c)(l).  A district court must first issue a COA.  *Id.*  Petitioner is only

entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's

procedural ruling was correct and whether the§ 2254 petition stated "a valid claim of the denial of

a constitutional right." *Id.*; *Slack* v. *McDaniel,* 529 U.S. 473, 484 (2000). To make a substantial

showing of the denial of a constitutional right, Petitioner  "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard* v. *Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack,* 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El* v. *Cockrell,* 537 U.S. 322, 335-36 (2003) *(quoting Barefootv. Estelle,* 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the Court's procedural rulings were correct, or whether the petition stated a substantial denial of a constitutional right. And because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

  **DONE AND ORDERED** in Tampa, Florida, on July 27, 2015.

      */s/ James D. Whittemore*

      **JAMES D. WHITTEMORE**
      **United States District Judge**

SA:ml
Copy to:
*Pro se* Petitioner
Counsel of Record